UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| In Re: ) | |
| ) | |
| BRENT DOUGLAS OZENKOSKI, ) | Case No. 09-43001-659 |
| ) | Chapter 13 |
| ) | |
| Debtor. ) | **PUBLISHED** |

**O R D E R**

The matter before the Court is the Objection to Confirmation of Plan filed by GMAC, Brief in Support of GMAC's Objection to Confirmation of Debtor's Plan, Debtor's Legal Brief Concerning Objection to Confirmation and Reply Brief in Support of GMAC's Objection to Confirmation of Debtor's Plan. The parties agreed to submit simultaneous briefs on the issue of personal use of a vehicle as it applies to the hanging paragraph of 11 U.S.C. § 1325(a). Upon consideration of the record as a whole, the Court makes the following FINDINGS OF FACT:

Debtor Brent Douglas Ozenkoski (hereinafter "Debtor") entered into a Retail Installment Sale Contract (hereinafter "Contract") with GMAC on June 30, 2008 for the purchase of a 2008 Chevrolet Silverado (hereinafter "Vehicle"). The Contract includes a "Use for Which Purchased" section under which a box marked "personal" has been checked. Debtor claims he disclosed to the salesperson his intention to use the Vehicle in the course of his employment as a textbook salesman. The parties have submitted Debtor's 2008 Federal and State Tax Return (hereinafter "Return") in which Debtor indicates he drove the Vehicle 28,398 miles for business purposes and 4,963 miles for other purposes. The Return also reports the date the Vehicle was placed into service as July 20, 2008. Debtor does not specify in what capacity the Vehicle is used for business purposes, beyond commuting to and from work, other than to generally state the Vehicle is used in the course and scope of his trade. Debtor filed a Chapter 13 Bankruptcy Case on June 30, 2009. Debtor's Chapter 13 Plan calls for bifurcation of GMAC's claim and GMAC subsequently brought its Objection to Confirmation of Plan (hereinafter "Objection").

GMAC objects to Debtor's Chapter 13 Plan on the basis that it fails to comply with the hanging paragraph of 11 U.S.C. § 1325(a). GMAC contends the debt at issue was incurred within 910 days of the filing of Debtor's bankruptcy petition, the collateral securing the claim is a motor vehicle acquired for personal use and the Chapter 13 Plan does not provide for payment in full of the underlying debt. Debtor concedes the Vehicle was purchased within the 910-day period but argues the Vehicle is for business use and was not acquired for personal use.  If the Court finds Debtor acquired the Vehicle for personal use, the Chapter 13 Plan cannot cram down the amount of the secured debt owed on the Vehicle to the fair market value of the Vehicle. Additionally, there is a dispute between the parties regarding who has the burden of proof to show the purpose for which the Vehicle was acquired.

## JURISDICTION

The Court has jurisdiction of this matter pursuant to 28 U.S.C. §§ 151, 157, and 1334 (2009) and Local Rule 81-9.01(B) of the United States District Court for the Eastern District of Missouri. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) (2009). Venue is proper in this District under 28 U.S.C. § 1409(a) (2009).

## CONCLUSIONS OF LAW

**The Burden of Proof**

Both Debtor and GMAC claim the other has the burden to produce evidence the Vehicle is, or is not, a personal use vehicle under 11 U.S.C. § 1325(a). Debtor is correct in his assertion that the initial burden of proof is on the objecting creditor.  A party seeking to change the status quo will usually have the burden of proof.  *Education Assistance Corp. v. Zellner, 827 F.2d* 1222, 1226 (8th Cir. 1987).  The burden generally "rests upon the party who, as determined by the pleadings or the nature of the case, asserts the affirmative of an issue." *Joseph A. Bass Co. v. United States,* 340 F.2d 842, 844 (8th Cir. 1965)*.* Absent the creditor's objection, the Chapter 13 Plan would have been confirmed. It follows suit that a creditor objecting to a Chapter 13 Plan on the basis that a vehicle

2

was acquired for personal use has the burden to prove that use. Once the creditor has submitted sufficient evidence to support its contention, the burden shifts to the debtor to rebut the creditor's claim.  *In re Coleman,* 373 B.R. 907, 911 (Bankr. W.D. Mo. 2007).

GMAC provided evidence Debtor signed the Contract which states the Vehicle was purchased for personal use. Although this fact alone does not *prove* Debtor's intended use at the time of acquisition, it is a strong indication of Debtor's intended use for the Vehicle and is sufficient to meet GMAC's burden of proof. *See In re Joseph*, No. 06-50655, 2007 WL 950267, at *3 (Bankr. W.D. La. 2007).  In this case, the burden has shifted to Debtor to show the Vehicle was not used, or intended to be used, for personal use, contrary to the information in the Contract.

**A Personal Use Vehicle**

At issue before the Court is whether Debtor's Vehicle was "acquired for personal use" according to § 1325(a).

The language in the hanging paragraph states:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consist of any other thing of value, if the debt was incurred during the 1-year period preceding that filing.

11 U.S.C. § 1325(a) (2009).

"[T]he term 'personal use' means, simply, non-business use." *In re Grimme,* 371 B.R. 814, 816 (Bankr. S.D. Ohio 2007).  To determine whether a debtor's vehicle was acquired for personal use as opposed to business use, the court considers the "totality of the circumstances." *In re Hill,* 352 B.R. 69, 72 (Bankr. W.D. La. 2006); *In re Solis,* 356 B.R. 398, 408 (Bankr. S.D. Tex 2006)*.* While there is no bright line rule to define personal as it is used in § 1325(a)*,* three major variations of the "totality of circumstances" approach have emerged in the relevant case law.

3

In *Hill,* the court found the appropriate test to be "whether the acquisition of the vehicle enabled the debtor to make a significant contribution to the gross income of the family unit." *Hill,* 352 B.R. at 73. In *Hill*, the debtors' use of a vehicle to commute to and from work was a sufficient enough contribution to the debtors' gross income that the vehicle was not considered a "personal" vehicle for purposes of § 1325(a). *Id.* The *Hill* Court noted that, in order to adhere to the plain meaning of § 1325, the court must determine whether the vehicle was "acquired for personal use" by considering *only* the debtor's intention for the vehicle at the time of purchase and ignore any "subsequent use of the vehicle for solely and unquestionably business purposes." *Id.* at 72.

A second application of the "totality of the circumstances" approach is found in *Solis,* 356 B.R. at 408. Rather than developing standards for what *does not* constitute personal use, as the *Hill* Court did, the court in *Solis* focused on defining what *does* constitute personal use. *Id.* at 410. The court held that a vehicle is a personal use vehicle if it is used to satisfy "significant and material" personal needs even when it is also used for business purposes. *Id.* at 409. The *Solis* Court also held that, in order for a vehicle to be deemed a personal use vehicle, the debtor's intention at the time of purchase must be to use the vehicle for "significant and material" personal use. *Id.* The *Solis* Court noted that, where there exists a realistic alternative to owning a vehicle, such as public transportation, merely commuting to and from work constitutes personal use. *Id.* at 410.

In *Joseph*, a third approach to applying the "totality of the circumstances" analysis was introduced. *Joseph,* 2007 WL 950267. Here, the court recognized the reality that many vehicles are used to satisfy a combination of both business and personal needs. The *Joseph* Court held the appropriate test for whether a vehicle was acquired for personal use or business use is whether or not the car is predominately used to perform functions of a business or trade. *Id.* at *4. The court defines predominate as "the nature and extent of any personal use of the vehicle, and the relative number of miles that the vehicle is driven for personal versus business uses." *Id.* The court

4

weighed factors such as the nature of the debtor's work, whether the vehicle was used for business-related duties, whether the employer required the purchase of the vehicle for those duties, whether the employer reimbursed the debtor for miles driven in the course of employment, whether the debtor claims the car as a business vehicle on yearly income tax returns, and the indication of personal or business on the sales contract. *Id.* at *3. The court held that the core consideration is whether the vehicle is actually used to perform work-related duties. *Id.*

While not every personal use vehicle will be used for business purposes, most business use vehicles will be used for an occasional personal purpose. In the instant case, Debtor's Vehicle is a mixed use vehicle. To determine whether the Vehicle was acquired for personal use for purposes of § 1325(a), this Court asks whether the business needs served by acquiring the Vehicle are ancillary to the personal needs of Debtor or whether the personal needs are secondary to Debtor's use in his business or trade. The test used by the *Hill C*ourt effectively deems a personal use vehicle a business vehicle if there exists *any* business use at all. The *Hill* test is unreasonable because it allows a vehicle primarily used to satisfy personal needs to easily escape the restrictions of § 1325(a) simply because a debtor drives to work in it. In contrast, the *Solis* Court's "substantial and material test" assumes personal use unless the car is used almost *entirely* for business purposes. The *Solis* test is unreasonable because it ignores the fact that, in reality, most business vehicles will occasionally be used to satisfy personal needs. The test articulated in *Joseph* allows a reasonable amount of personal use which will naturally occur in the course of the ownership of a business vehicle. Thus, the *Joseph* test is the most reasonable test to use in the instant case. Also, to adhere to the plain meaning of § 1325(a), the intention of Debtor at the time of the acquisition of the Vehicle must be considered. Although such intent is relevant, it does not render evidence of subsequent business use irrelevant. Debtor's intent at acquisition should be considered in the "totality of the circumstances" and subsequent use may be an indicator of Debtor's intention at the time of purchase.

GMAC alleges the Vehicle was not intended to be used for business purposes *at the time of acquisition*. GMAC notes Debtor's 2008 Business Expense Form, which is part of Debtor's Return, indicates the date the Vehicle was placed into service was July, 20 2008, 20 days after its purchase. GMAC alleges the 20-day difference signifies Debtor did not acquire, or intend to acquire, the Vehicle for a business purpose on the very day of purchase. However, given that Debtor reports no change in job duties during this 20-day period, it is extremely unlikely he bought the Vehicle with the intent to use it solely for personal use and then changed his mind a mere 20 days later. Also the date the Vehicle is put into use as reported to the IRS may be Debtor's approximation of the purchase date of the Vehicle and is merely evidence of the time around which Debtor began using the Vehicle for his business.  Even if Debtor did wait 20 days to put the Vehicle to a business use, it is not a significant length of time and is certainly near enough to the time of purchase for this Court to conclude Debtor began using the Vehicle for business purposes at the time of its purchase so long as the nature of the use was to perform job-related duties.

Debtor insists the indication of personal use on the Contract is a mistake and that he discussed his business-related intent for the Vehicle with the salesperson at the time of purchase. GMAC points out Debtor has not produced any evidence to prove the statements to the salesperson were ever made. The box marked personal on the Contract is evidence of Debtor's intention for the Vehicle, however, such evidence "is not dispositive, and must be considered in light of the totality of the circumstances." *Joseph,* 2007 WL 950267, at *3.  In considering the totality of the circumstances, the Court infers the actual intent of Debtor at the time of acquisition by considering the predominate use of the Vehicle after its purchase.

Debtor claims he uses the Vehicle in the course and scope of his employment and that it allows him to generate income as a textbook salesperson. Debtor further claims his employer requires him to use his own vehicle for those work related duties but does not specify exactly which duties he performs and how they require the use of the Vehicle. GMAC argues Debtor has

6

produced no evidence showing his employer requires him to have a vehicle or that his employer pays for the loan payments, insurance, maintenance, gas or repairs. GMAC further asserts Debtor has not produced evidence to show that the Vehicle was not used for personal purposes. It is unreasonable for GMAC to demand Debtor to provide evidence he did not use the Vehicle for personal purposes as it is nearly impossible to prove an action that has *not* been taken. Additionally, Debtor is not required to show proof Debtor's employer paid for the Vehicle, insured the Vehicle, or even required the Vehicle at all if the Debtor can show the truck was used in the course and scope of his employment. *In re Powell*, 403 B.R. 583, 586 (Bankr. C.D. Ill. 2009).

In support of his claim that the Vehicle was used predominantly for business purposes in the course of his employment, Debtor has offered his Return which includes a copy of his Alternative Minimum Tax Form and Employee Business Expense Form. The Employee Business Expense form reports 82.52% of the miles driven in the Vehicle in 2008 were for business purposes. GMAC contests the use of the IRS forms and claims the IRS forms have no relevancy according to *Powell*. (where car had been purchased in 2007 and information on the 2008 IRS forms did not corroborate debtor's claim car was for business use, 2008 IRS forms were found to be insufficient evidence of acquisition for non-personal use for purposes of § 1325). Under the circumstances, this Court finds the Return is not only relevant, but also the most compelling piece of evidence offered by Debtor. The Return suggests Debtor subjectively considered the Vehicle a business vehicle. On the Return, Debtor claimed the Vehicle as a business expense resulting in a substantial amount of total claimed deductions. Due to the large deductions, Debtor was subjected to an alternative minimum tax. Ultimately, by claiming the Vehicle as a business expense, Debtor subjected himself to a substantial amount of additional taxes. If Debtor did not use the Vehicle in the course and scope of his employment he certainly would not have claimed the Vehicle as a business expense to his own detriment. Debtor reported similar mileage figures in his brief and the Return lends credibility to those claims.

7

GMAC also argues the amount of miles reported as other, non-business use, miles on the Return are significant enough for the Vehicle to constitute a personal use vehicle. As previously stated, it is more reasonable to adopt a "predominate use" test over the "significant and material" test from *Solis.* The fact that 82.52% of the miles are business miles is sufficient to show the Vehicle is predominately used as a business use vehicle.

Where a vehicle was primarily used for business purposes, it hardly seems logical that Congress would intend the Vehicle to be deemed a personal use vehicle merely because the personal box was checked on a boilerplate contract and Debtor may have waited 20 days to begin using the Vehicle. While the subjective intent of Debtor at the instant of the Vehicle's purchase is relevant, this intent may be inferred from Debtor's actual use of the Vehicle after its purchase. The fine print on the boilerplate contract and the ambiguous 20-day window in which the Vehicle may, or may not, have been used for business purposes, are not persuasive enough to overcome Debtor's evidence that the Vehicle was predominantly used in the course and scope of his employment. Therefore,

**IT IS ORDERED THAT** GMAC's Objection to Confirmation of Plan is OVERRULED.

*Kathy A. Surratt-States*
KATHY A. SURRATT-STATES
United States Bankruptcy Judge

DATED: October 23, 2009
St. Louis, Missouri

Copies to:

Office of the United States Trustee
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Suite 6.353
St. Louis, MO  63102

Brent Douglas Ozenkoski
225 Mystic Cove
O'Fallon, MO 63368

Angela Renee Collins
Riezman Berger, P.C.
7700 Bonhomme, 7th FLoor
St. Louis, MO 63105

David Nelson Gunn
The Bankruptcy Company
1600 S. Brentwood, Ste 725
Brentwood, MO 63144

John V. LaBarge, Jr
Chapter 13 Trustee
P.O. Box 430908
St. Louis, MO 63143